GARY A. CLARK, Cal. Bar No. 65455
gclark@sheppardmullin.com
DARREN M. FRANKLIN, Cal. Bar No. 210939
dfranklin@sheppardmullin.com
SHEPPARD MULLIN RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone: 213-620-1780
Facsimile: 213-620-1398

ROBERT E. BROWNE (*pro hac vice*)
rbrowne@ngelaw.com
WILLIAM J. LENZ (*pro hac vice*)
wlenz@ngelaw.com
MAURICE E. FINNEGAN, III (*pro hac vice*)
mfinnegan@ngelaw.com
MICHAEL R. TURNER (*pro hac vice*)
mturner@ngelaw.com
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, Suite 1700
Chicago, Illinois 60602-3801
Telephone: 312-269-8000

Attorneys for Defendant and Counter-Claimant
PRECI-DIP SA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| TRI-STAR ELECTRONICS INTERNATIONAL, INC., | Case No. CV 08-04226 GAF (AJWx) |
| Plaintiff | The Honorable Gary A. Feess |
| v. | |
| PRECI-DIP DURTAL SA, | **DEFENDANT AND COUNTERCLAIMANT PRECI-DIP SA'S AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS;** |
| Defendant. | |
| PRECI-DIP SA, | **DEMAND FOR JURY TRIAL** |
| Counter-Claimant, | |
| v. | |
| TRI-STAR ELECTRONICS INTERNATIONAL, INC., | |
| Counter-Defendant. | |

**ORIGINAL**

-1-

DEFENDANT PRECI-DIP SA'S AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

1    Defendant/Counter-Claimant Preci-Dip SA ("Preci-Dip"), through its

2    attorneys, states for its Amended Answer to the Complaint of Plaintiff/Counter-

3    Defendant Tri-Star Electronics International, Inc. ("Tri-Star"), upon knowledge

4    with respect to its own acts and upon information and belief with respect to all other

5    matters, as follows:

6                                   **Nature of the Action**

7         1.     In response to paragraph 1 of the Complaint, Preci-Dip admits that Tri-

8    Star's Complaint purportedly sets forth a patent infringement action for alleged

9    infringement of U.S. Patent No. 6,250,974 ("the '974 Patent"). Preci-Dip further

10   admits that it offers for sale and sells in the United States a MIL contact with

11   reversed clip under military specification MIL-C-39029. Preci-Dip further admits

12   that the '974 Patent bears the title HOODLESS ELECTRICAL SOCKET

13   CONTACT and on its face page indicates that it was issued on June 26, 2001, and

14   that Exhibit A of Tri-Star's Complaint appears to be a copy of the '974 Patent, but

15   Preci-Dip does not have sufficient information to admit or deny that the '974 Patent

16   was issued after full and fair examination by the U.S. Patent and Trademark Office

17   and therefore denies the same. Preci-Dip admits that the '974 Patent was assigned

18   to Tri-Star. Preci-Dip is without knowledge sufficient to form a belief as to the

19   truth of the remaining allegations contained in Paragraph No. 1 and therefore denies

20   the same.

21                                        **Parties**

22        2.     Preci-Dip is without knowledge sufficient to form a belief as to the

23   truth of the allegations contained in Paragraph No. 2 and therefore denies the same.

24        3.     Preci-Dip admits that it is a Swiss corporation having its headquarters

25   and principal place of business at Rue Saint-Maurice 34, P.O. Box 834, CH-2800

26   Delemont, Switzerland. Preci-Dip admits that it has sold product in California, but

27   denies the remaining allegations of Paragraph No. 3.

28

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

-2-

DEFENDANT PRECI-DIP SA'S AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

1   **Jurisdiction and Venue**

2       4.      Admitted.

3       5.      Preci-Dip admits that this Court has personal jurisdiction over Preci-

4   Dip.  Preci-Dip denies that it has placed any infringing products into the stream of

5   commerce.  Preci-Dip is without knowledge as to what Tri-Star has been informed

6   or believes, and, on that ground, denies the remaining allegations of Paragraph No.

7   5.

8       6.      Preci-Dip admits that it has sold products in the State of California and

9   that venue is proper in this Court.  Preci-Dip denies the remaining allegations set

10  forth in Paragraph No. 6.

11      **Count I – Infringement of U.S. Patent No. 6,250,974**

12      7.      Preci-Dip incorporates its answers to Paragraphs 1 through 6 above.

13      8.      Preci-Dip admits that it offers for sale and sells in the United States a

14  MIL contact with reversed clip under military specification MIL-C-39029.  Preci-

15  Dip denies the remaining allegations set forth in Paragraph No. 8.

16      9.      Preci-Dip denies the allegations set forth in Paragraph No. 9.

17      10.     Preci-Dip denies the allegations set forth in Paragraph No. 10.

18      11.     Preci-Dip denies the allegations set forth in Paragraph No. 11.

19      12.     Preci-Dip denies the allegations set forth in Paragraph No. 12.

20      **Prayer**

21      Preci-Dip denies that Tri-Star is entitled to any relief whatsoever.

22

23      **PRECI-DIP'S AFFIRMATIVE DEFENSES**

24      For its Affirmative Defenses, Preci-Dip alleges as follows:

25      **First Affirmative Defense**

26      13.     Tri-Star is barred from asserting the '974 Patent against Preci-Dip

27  under the equitable doctrines of acquiescence, laches, and/or estoppel.

28

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

-3-

W02-WEST:1DAF1\403360371.1

DEFENDANT PRECI-DIP SA'S AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

### Second Affirmative Defense

14.     Any potential relief from actions alleged by Tri-Star should be denied on the grounds of Tri-Star's unclean hands related to this matter, its misuse of the '974 Patent, and its enforcement of the '974 Patent in bad faith.

### Third Affirmative Defense

15.     Each and every claim of the '974 Patent is invalid, unenforceable, and/or void for failing to satisfy the conditions of one or more of the provisions of Title 35 of the United States Code, § 101, et seq., including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

### Fourth Affirmative Defense

16.     Preci-Dip has not infringed and is not infringing any valid claim of the '974 Patent, either literally or under the doctrine of equivalents.

### Fifth Affirmative Defense

17.     Preci-Dip has not induced and is not inducing, and has not contributed to and is not contributing to, any infringement of any valid claim of the '974 Patent, either literally or under the doctrine of equivalents.

### Sixth Affirmative Defense

18.     By virtue of the arguments made during the prosecution of the application for the '974 patent in order to obtain allowance of the claims, and/or the language and meaning of the claims of the '974 patent, Tri-Star is estopped from asserting a claim construction that would encompass any of Preci-Dip's products alleged to infringe.

### Seventh Affirmative Defense

19.     The '974 Patent and its claims are unenforceable on the grounds of inequitable conduct.

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

W02-WEST:1DAF1\403360371.1

-4-

DEFENDANT PRECI-DIP SA'S AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

## PRECI-DIP'S COUNTERCLAIMS

Defendant/Counter-Claimant Preci-Dip, for its counterclaims against Plaintiff/Counter-Defendant Tri-Star, hereby alleges the following:

### Parties

20.    Preci-Dip is a corporation organized under the laws of Switzerland, with a principal place of business at Rue St Maurice 34, CH-2800 Delemont, Switzerland.

21.    Preci-Dip is a world leader in the design, manufacture and sale of cutting-edge interconnect components, such as its MIL (Military) contact with reversed clip that is manufactured under military specification MIL-C-39029 (the "Reversed Clip Contact"). The Reversed Clip Contact is covered by Preci-Dip's U.S. Patent No. 6, 264, 508, and stands accused of infringement in this action.

22.    Upon information and belief, Tri-Star is a corporation organized under the laws of Delaware, with a principal place of business at 2201 Rosecrans Ave., El Segundo, California 90245.

23.    Tri-Star is a competitor of Preci-Dip and has alleged, through, among other things, a complaint and communications with Preci-Dip's customers, that Preci-Dip's patented interconnect component infringes the '974 Patent, alleged to be owned by Tri-Star.

### Nature of the Action

24.    These counterclaims are based on Tri-Star's unfair competition in violation of 15 U.S.C. § 1125(a)(1)(B), Cal. Bus. & Prof. Code §21 17200 et seq. and California common law, as well as Tri-Star's tortious interference with Preci-Dip's contractual and future business relationships. In addition, Preci-Dip seeks a declaration of non-infringement, invalidity, and unenforceability of the '974 Patent.

### Jurisdiction and Venue

25.    This Court has subject matter jurisdiction under one or more of the following statutes: 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332

-5-

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

W02-WEST:1DAF1\403360371.1

DEFENDANT PRECI-DIP SA'S AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

1    (diversity of citizenship), 28 U.S.C. § 1338 (patents), and 28 U.S.C. § 1367

2    (supplemental jurisdiction).

3         26.    Tri-Star is subject to personal jurisdiction in the Central District of

4    California.

5         27.    Venue is proper under 28 U.S.C. § 1391 (a), (b) and (c).

6         **Facts Relating to Unfair Competition and State Law Claims**

7         28.    Preci-Dip's Reversed Clip Contact is the subject of Tri-Star's claims

8    of infringement. The Preci-Dip Reversed Clip Contact comprises three main parts:

9    a contact body, a reversed clip, and a hood.

10        29.    Preci-Dip's Reversed Clip Contact is covered by one or more claims of

11   Preci-Dip's U.S. Patent No. 6,264,508 ("the '508 Patent"). A copy of the '508

12   Patent is attached as Exhibit A.

13        30.    Preci-Dip sells its Reversed Clip Contact through its distributors and to

14   various customers, some of which are located in the United States and within this

15   District.

16        31.    The '974 Patent, alleged to be owned by Tri-Star, is directed to a

17   hoodless electrical socket contact and is appropriately entitled, "Hoodless Electrical

18   Socket Contact." (*See* Tri-Star's Complt., Exh. A.)

19        32.    Upon information and belief, Tri-Star directly, or through its agents,

20   distributors, and affiliates, sells and distributes various solid (i.e., "integral")

21   electrical socket contacts having hoods throughout the United States, including

22   within this District, but does not sell any hoodless socket contact or non-integral

23   socket contact as disclosed in or covered by the claims of its '974 patent.

24        33.    On January 25, 2006, Tri-Star sent a letter to Preci-Dip indicating,

25   among other things, that Tri-Star believed "Preci-Dip may be in violation of Tri-

26   Star's reverse clip contact design." A copy of the letter dated January 25, 2006, is

27   attached as Exhibit B. The letter does not identify the '974 Patent.

28

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

W02-WEST:1DAF1\403360371.1

-6-

DEFENDANT PRECI-DIP SA'S AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

34.  On April 26, 2006, after having conducted an investigation to determine what patents were allegedly owned by Tri-Star and confirming that Preci-Dip did not infringe any such patents, Preci-Dip responded to Tri-Star's letter stating, *inter alia*, that it did not infringe any valid, enforceable claims of Tri-Star's '974 Patent. A copy of the letter dated April 26, 2006, is attached as Exhibit C.

35.  When Preci-Dip did not receive any response to its April 26, 2006 letter, Preci-Dip proceeded with its business, investing substantial money, time and effort in expanding its production and sales of the Reverse Clip Contact, all while operating under the assumption that Tri-Star agreed with Preci-Dip's conclusion of noninfringement. However, nineteen (19) months later, on November 14, 2007, Tri-Star sent another letter, once again accusing Preci-Dip's Reversed Clip Contact of "violating [Tri-Star's] patent filings" without any explanation of why or how Preci-Dip allegedly infringed. A copy of the letter dated November 14, 2007, is attached as Exhibit D.

36.  Several months later, Preci-Dip learned, through a customer, that Tri-Star had filed the instant suit alleging that Preci-Dip's Reversed Clip Contact infringes the '974 Patent.

37.  Contemporaneously with the filing of its complaint, Tri-Star sent a letter to numerous customers and distributors of Preci-Dip informing them of Tri-Star's Complaint and its claims that Preci-Dip's Reversed Clip Contact infringes the '974 patent. A copy of such a letter dated June 27, 2008, is attached as Exhibit E.

38.  Thereafter, Tri-Star personnel intentionally called some of these same Preci-Dip customers to, among other things, further threaten and coerce them to not buy Preci-Dip's Reversed Clip Contact.

39.  In addition to the threats and coercions by Tri-Star, Tri-Star also made false and disparaging remarks regarding Preci-Dip's Reversed Clip Contact product. Specifically, Tri-Star stated that Preci-Dip's product did not meet military specification MIL-C-39029, a statement that Tri-Star knew to be false. Attached as

-7-

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

W02-WEST:1DAF1\403360371.1

DEFENDANT PRECI-DIP SA'S AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

1   Exhibit F is a Qualified Products List from July 12, 2007, and letters from the

2   Department of the Navy from June 5, 2003, May 8, 2008, and October 22, 2008,

3   each showing that Preci-Dip's Reversed Clip Contact meets, and has met for a long

4   period of time, the required military specifications.

5       40.   At least one Preci-Dip customer, who also distributes Tri-Star

6   products, was told by Tri-Star that if it continued to carry Preci-Dip products, Tri-

7   Star would terminate its relationship with the customer.  At least one former Preci-

8   Dip customer cancelled its contract with Preci-Dip because of Tri-Star's bad faith

9   threats.  On information and belief, Tri-Star also has a nonexclusive agreement with

10  certain distributors that unlawfully prohibits these distributors from handling

11  competitive products.

12      41.   SAE International (SAE), is a private, global organization of scientists,

13  engineers and practitioners that advances self propelled vehicle and system

14  knowledge.  SAE develops and maintains, through various committees, standards

15  used to determine the qualification of products, including electrical contacts, for use

16  in military applications.  SAE is a non-governmental, non-legislative organization

17  and the SAE AE-8C1 Technical Committee, which establishes standards for

18  electrical connectors and contacts, includes end users, distributors and

19  manufacturers of such contacts.  Because of the diverse and commercial nature of

20  its membership, SAE policies forbid its members from acting as agents or

21  representatives of any organization they are associated with or to engage in any

22  activity that can appear to result in a conflict of interest.

23      42.   David Bouzek is the Vice President of Sales and Marketing for Tri-

24  Star.  Mr. Bouzek has executed Declarations filed by Tri-Star in this case.  Mr.

25  Bouzek attends the semi-annual SAE AE-8C1 committee meetings and is a voting

26  member of the SAE AE8-C1 Technical Committee.

27      43.   During a May, 2010 SAE AE-8C1 Technical Committee meeting

28  attended by customers and potential customers of electrical contacts, Mr. Bouzek

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

-8-

W02-WEST:1DAF1\403360371.1

DEFENDANT PRECI-DIP SA'S AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

raised an agenda item and made a presentation with respect to what he termed "multi-part stamped and formed socket contacts." Mr. Bouzek asserted to the committee that such contacts had reliability and performance issues that needed to be addressed by imposition of stricter standards by the Technical Committee. Mr. Bouzek has continued to make such assertions and actively pursue this topic at subsequent meetings of the Technical Committee and privately with committee members. On information and belief, Mr. Bouzek has made such presentations and arguments in an attempt to persuade the SAE to adopt different and stricter testing standards for such contacts than are used to evaluate other types of electrical contacts, such as those sold by his employer, Tri-Star.

44.     None of Mr. Bouzek's presentations have included any test data, numerical analysis, or evidence of field failures of Preci-Dip's Reverse Clip contact, but have vaguely and generally claimed that "multi-part stamped and formed socket contacts" are unreliable and untested. Mr. Bouzek has further deceptively implied to the SAE Committee that Preci-Dip's Reversed Clip Contact implicated in this lawsuit is such a "multi-part stamped and formed socket contact," and, therefore, subject to failure and should be held to a different and higher testing standard.

45.     Preci-Dip's Reversed Clip Contact is not a "multi-part stamped and formed contact". Rather, it features a machined socket bore formed from a solid cylindrical blank in the same manner as the bore of the "integral" contacts sold by Tri-Star. Moreover, Preci-Dip's Reverse Clip contact has been listed on the military's Qualified Products List since at least 2003, and has been sold to the U.S. military for many years without a single report of failure in the field.

46.     Mr. Bouzek's statements and conduct before the SAE and in private to SAE committee members consist of representations about a product of Tri-Star's business competitor, Preci-Dip, made for the purpose of promoting the sale of Tri-Star's competing contacts by denigrating Preci-Dip's contacts or making them more

-9-

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

W02-WEST:1DAF1\403360371.1

DEFENDANT PRECI-DIP SA'S AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

1 difficult to sell.

2      47.    Mr. Bouzek's presentations and recommendations are directed to an

3 audience including actual and potential customers of both Preci-Dip and Tri-Star.

4 Should Mr. Bouzek's recommendations be adopted by SAE, Preci-Dip's Reversed

5 Clip Contact could be removed from the Qualified Products List and/or tested to an

6 SAE standard higher than that to which Tri-Star's competing electrical contacts are

7 held.

8      48.    Upon information and belief, Tri-Star is attempting to use Mr.

9 Bouzek's position in the SAE, in clear conflict with SAE policy, to persuade the

10 SAE AE-8C1 committee to exclude Preci-Dip products from the market by

11 imposition of unwarranted standards.

12        **Facts Relating to Invalidity and Unenforceability**

13      49.    On June 25, 1998, Tri-Star filed Application Serial No. 09/104,733 in

14 the United States Patent and Trademark Office ("USPTO").  All claims in this

15 application were repeatedly and finally rejected by the USPTO, so on September

16 14, 1999, Tri-Star filed a continuation-in-part application, Serial No. 09/395,515

17 from which the '974 patent eventually issued.

18      50.    After Tri-Star filed Application Serial No. 09/104,733, the parent

19 application to the application from which the '974 patent issued, it also filed the

20 same invention disclosure in an attempt to obtain rights in other countries.  The

21 European Patent Office assigned Tri-Star's application for patent rights in Europe

22 EP99304422.

23      51.    While Tri-Star was prosecuting application U.S. Serial No. 09/395,515

24 (which matured into the '974 Patent) before the USPTO, it was simultaneously

25 prosecuting EP99304422 directed to substantially the same content to obtain patent

26 rights in Europe.

27      52.    On or about March 13, 2001, prior to the payment of the issue fee for

28 the '974 Patent in the U.S., Tri-Star received a European Search Report in its

-10-

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

W02-WEST:1DAF1\403360371.1

DEFENDANT PRECI-DIP SA'S AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

1  EP99304422 application that identified U.S. Pat. No. 5,088,942 ("the Welsh '942
2  Patent") as an "X" reference, indicating that the reference was found to be
3  particularly relevant to patentability in and of itself. A copy of the Search Report is
4  attached as Exhibit G.

5       53.    On or about May 4, 2001, Tri-Star, despite knowledge of the Welsh
6  '942 Patent, paid the issue fee on the application which matured into the '974
7  Patent without disclosing the Welsh '942 Patent to the USPTO Examiner. The '974
8  Patent issued on June 26, 2001. A copy of the Welsh '942 Patent is attached hereto
9  as Exhibit H.

10       54.    In December 2009, Preci-Dip filed a Request for Ex Parte
11  Reexamination of the '974 Patent with the USPTO, citing to several patents,
12  including the Welsh '942 Patent.

13       55.    On or about Feb. 5, 2010, the USPTO granted Preci-Dip's Request,
14  finding that the Welsh '942 Patent raised a substantial new question of patentability
15  with respect to each of the twenty claims of the '974 Patent.

16       56.    The Welsh '942 Patent is, thus, material to the patentability of each
17  claim of the '974 Patent.

18       57.    At no time prior to issuance of the '974 Patent did Tri-Star identify the
19  Welsh '942 Patent to the USPTO as a prior art reference, despite having knowledge
20  of the Welsh '942 Patent from the European Search Report in a related application
21  and reason to believe that the Welsh '942 Patent was material to patentability.

22       58.    On or about July 15, 2010, the USPTO issued an office action in the
23  Ex Parte Reexamination of the '974 Patent rejecting sixteen of its twenty claims as
24  anticipated by the Welsh '942 Patent and/or obvious in light of the Welsh '942
25  Patent in combination with the disclosed prior art contained within the '974 Patent.

26       60.    Tri-Star responded by personally visiting the USPTO examiner and
27  arguing that the '974 Patent was patentable over the Welsh '942 Patent because the
28  spring tines in the Welsh '942 Patent terminate in the middle section of its bore

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

1    instead of extending near or adjacent to the free end of the socket bore to grasp the
2    pin in close proximity to that end as required by the claims of the '974 Patent.

3         61.    The USPTO examiner was persuaded by Tri-Star's characterization,
4    and confirmed the '974 Patent based on this asserted distinction between the claims
5    of the '974 Patent and the prior art.  A copy of the Office communication dated
6    Nov. 23, 2010, which confirms this as the basis for the examiner's findings, is
7    attached as Exhibit I.

8         62.    However, the '974 Patent was admittedly designed to cover products
9    intended to meet MIL-C-39029, a military specification setting forth certain
10   requirements for electrical contacts.  A copy of Tri-Star's response to a USPTO
11   office action in the prosecution of the '974 Patent, dated November 17, 2000,
12   attached as Exhibit J, identifies MIL-C-39029 and its importance on page 15.  MIL-
13   C-39029 was in effect prior to the effective filing date of the '974 Patent.

14        63.    MIL-C-39029 requires, *inter alia*, that the tines of a spring or pressure
15   contact extend near or adjacent to the free end of the socket bore so as to engage the
16   pin in close proximity to the open end of the socket bore.  A copy of MIL-C-39029
17   dated February 14, 1995, is attached as Exhibit K.

18        64.    Thus, Tri-Star knew, at the time it made its assertion of patentability in
19   the Reexamination, that the basis for its assertion was shown in the prior art
20   military specification MIL-C-39029 but failed to advise the USPTO of this fact.

21

22   ## CAUSES OF ACTION

23   ### Count I - Declaration of Noninfringement

24        65.    Preci-Dip realleges and incorporates herein the preceding paragraphs
25   1-64.

26        66.    Preci-Dip has not infringed, is not now infringing, and has not
27   contributorily infringed or induced infringement of any valid claims of the '974
28   Patent, either literally or under the doctrine of equivalents.  In particular, the '974

-12-

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

W02-WEST:1DAF1\403360371.1

DEFENDANT PRECI-DIP SA'S AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

1    Patent is directed to a <u>hoodless</u> electrical connector. This invention is distinguished

2    from prior-existing, hooded, three-piece contacts, of which Preci-Dip's Reversed

3    Clip Contact is a good example, throughout both the description and prosecution

4    history of the '974 Patent. As such, Preci-Dip's products cannot be said to infringe

5    the '974 Patent.

6         67.    Preci-Dip is, therefore, entitled to a judicial determination and

7    declaration that its Reversed Clip Contacts do not infringe, and have not infringed,

8    any valid claim of the '974 Patent, and that Preci-Dip has not committed any act of

9    direct or indirect infringement of the '974 Patent with respect to products made or

10   sold by Preci-Dip since issuance of the '974 Patent.

11              **Count II - Declaration of Invalidity and Unenforceability**

12        68.    Preci-Dip realleges and incorporates herein the preceding paragraphs

13   1-67.

14        69.    Preci-Dip alleges, on information and belief, that each and every claim

15   of the '974 Patent is invalid, unenforceable and/or void for failure to comply with

16   one or more of the requirements of the Patent Laws of the United States, including

17   35 U.S.C. §§ 101, 102, 103 and 112.

18        70.    Specifically, Preci-Dip alleges that the '974 Patent is unpatentable

19   under 35 U.S.C. § 102(b) as being anticipated by various prior art references

20   including, but not limited to, the Welsh '942 Patent. Additionally, Preci-Dip

21   alleges that the claims are unpatentable under 35 U.S.C. § 103(a) as being obvious

22   in light of various combinations of prior art references.

23        71.    In addition, the '974 Patent is unenforceable because Tri-Star has

24   misused its patent and has unlawfully attempted to extend the scope of its alleged

25   patent rights under the '974 Patent.

26        72.    In addition, the '974 Patent is unenforceable because of Tri-Star's

27   inequitable conduct in intentionally misleading the USPTO by: 1) withholding the

28   Welsh '942 Patent from the USPTO during the prosecution of the application which

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

W02-WEST:1DAF1\403360371.1

DEFENDANT PRECI-DIP SA'S AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

1  lead to the '974 Patent, despite knowing that the Welsh '942 Patent was material
2  prior art, and 2) making an argument in support of patentability during the
3  Reexamination that it knew was disclosed by the prior art. The USPTO relied on
4  Tri-Star to abide by its duty of good faith and candor in accordance with 37 C.F.R.
5  §1.56, which Tri-Star failed to do in both instances.

6  73. Preci-Dip is, therefore, entitled to a judgment declaring that the '974
7  Patent is invalid, void and unenforceable.

### Count III - Federal Unfair Competition
### (15 U.S.C. § 1125(a)(1)(B))

10 74. Preci-Dip realleges and incorporates herein the preceding paragraphs
11 1-73.

12 75. As set forth above, Tri-Star has embarked, in bad faith, on a campaign
13 targeted at completely denying the goodwill associated with Preci-Dip's name and
14 Reversed Clip Contact product and to harass, illegally threaten and coerce Preci-
15 Dip's customers to stop buying the Preci-Dip Reversed Clip Contact.

16 76. In particular, on information and belief, Tri-Star has systematically and
17 continually used in commerce false and misleading representations of fact.
18 Specifically, Tri-Star personnel called Preci-Dip's customers and knowingly made
19 the false representation that the Preci-Dip Reversed Clip Contact did not meet the
20 military specifications for which it was designed. Such statements misrepresent the
21 characteristics and qualities of Preci-Dip's goods.

22 77. In addition, Tri-Star has made repeated efforts to convince the SAE
23 AE8-C1 Technical Committee that Preci-Dip's Reversed Clip Contact is not safe
24 and should be re-qualified under more exacting test standards, despite having no
25 evidence to support its position.

26 78. Tri-Star's conduct is causing, and is likely to continue to cause in the
27 future, damage to Preci-Dip, in violation of Section 43 of the Lanham Act, 15
28 U.S.C. § 1125(a)(1).

-14-

79.    Tri-Star's unauthorized and tortious conduct also has deprived and will continue to deprive Preci-Dip of the ability to control the consumer perception of its goods, placing the valuable reputation and goodwill of Preci-Dip in the hands of Tri-Star, over whom Preci-Dip has no control.

80.    Tri-Star's bad faith misrepresentations, threats and other conduct, particularly toward Preci-Dip's current and potential customers, render this case exceptional under 15 U.S.C. § 1117(a).

81.    As a result of Tri-Star's aforesaid conduct, Preci-Dip has suffered substantial damage and irreparable harm constituting an injury for which Preci-Dip has no adequate remedy at law.  Unless this Court enjoins Tri-Star's conduct, Preci-Dip will continue to suffer irreparable harm.

## Count IV - Violation of the California Unfair Competition Act

(Cal. Bus. & Prof. Code § 17200 et seq.)

82.    Preci-Dip realleges and incorporates herein the preceding paragraphs 1-81.

83.    Tri-Star's aforesaid conduct constitutes unfair, unlawful, and fraudulent business practices in violation of California Business and Professions Code § 17200 et seq.

84.    These wrongful acts committed in bad faith have proximately caused and will continue to cause plaintiff Preci-Dip substantial injury, including loss of customers, dilution of its goodwill, confusion of potential customers and injury to its reputation.  These  actions will cause imminent irreparable harm and injury to Preci-Dip, the amount of which will be difficult to ascertain, if they continue. Preci-Dip is without an adequate remedy at law.

85.    Preci-Dip is entitled to a permanent injunction restraining Tri-Star and its members, officers, agents, employees, and other all persons acting in concert with Tri-Star from engaging further in such unlawful conduct.

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

W02-WEST:1DAF1\403360371.1

DEFENDANT PRECI-DIP SA'S AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

## Count V - California Common Law Unfair Competition

86.   Preci-Dip realleges and incorporates herein the preceding paragraphs 1-85.

87.   Tri-Star's bad faith misrepresentations to current and potential customers as to the characteristics of Preci-Dip's products, as well as the false allegations of Preci-Dip's infringement of the '974 Patent amount to an intentional misappropriation of Preci-Dip's name, reputation and commercial advantage.  As a result of Tri-Star's willful and intentional misappropriation and tarnishment of Preci-Dip's valuable goodwill, Tri-Star will be unjustly enriched.

88.   Tri-Star's acts described above constitute unfair competition in violation of California common law, as the aforementioned acts amount to an intentional misappropriation of Preci-Dip's reputation and commercial advantage.

89.   As a result of Tri-Star's aforesaid conduct, Preci-Dip has suffered substantial damage and irreparable harm constituting an injury for which Preci-Dip has no adequate remedy at law.  Unless this Court enjoins Tri-Star's conduct, Preci-Dip will continue to suffer irreparable harm.

## Count VI - Interference with Contractual Relations and
## Prospective Business Advantage

90.   Preci-Dip realleges and incorporates herein the preceding paragraphs 1-89.

91.   Based on its worldwide relationships with its retailers and customers, Preci-Dip had and has valid business relationships and contracts with existing customers as well as potential customers for its many products, including the Preci-Dip Reversed Clip Contact.   The contracts and business relationships provided economic benefits and advantages to Preci-Dip.

92.   On information and belief, Tri-Star had knowledge of Preci-Dip's business relationships and contracts with existing customers, as well as with potential customers, for its many products, including the Preci-Dip Reversed Clip

-16-

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

W02-WEST:1DAF1\403360371.1

DEFENDANT PRECI-DIP SA'S AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

1    Contact.

2    93.    On information and belief, Tri-Star wrongfully, intentionally and in

3    bad faith interfered with and sought to prevent contract formation, procured and

4    sought to procure contractual breach, and induced and sought to induce termination

5    of Preci-Dip's business relationships and contracts with existing customers, as well

6    as with potential customers, for Preci-Dip's many product lines, including the Preci-

7    Dip Reversed Clip Contact.    Tri-Star's improper and tortious interference stems

8    from its filing of the Tri-Star Complaint, as well as its further improper

9    conversations and maliciously false representations with Preci-Dip's current and

10   potential customers, and its attempt to coerce a standards organization to ban or

11   otherwise restrict the sale of Preci-Dip's products.   In so doing, Tri-Star has acted

12   with malice, oppression, and fraud.

13   94.    Tri-Star's unlawful conduct has caused and will continue to cause

14   Preci-Dip substantial damage and irreparable harm constituting an injury for which

15   Preci-Dip has no adequate remedy at law.   Unless this Court enjoins Tri-Star's

16   conduct, Preci-Dip will continue to suffer irreparable harm.

17                              **PRAYER FOR RELIEF**

18   WHEREFORE, Preci-Dip requests that the Court enter judgment in its favor

19   and against Tri-Star as follows:

20   a.    Declaring that the '974 Patent is invalid, void, and

21   unenforceable;

22   b.    Declaring that Preci-Dip and Preci-Dip's Reverse Clip Contacts

23   do not infringe, and have not infringed, any valid claim of the '974 Patent;

24   c.    Declaring that Preci-Dip has not committed any act of direct or

25   indirect infringement of the '974 Patent;

26   d.    Enjoining Tri-Star, its officers, agents, employees,

27   representatives, successors, assigns, and counsel, and all parties acting in privity or

28   concert with it, permanently and preliminarily during the pendency of this action,

-17-

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

W02-WEST:1DAF1\403360371.1

DEFENDANT PRECI-DIP SA'S AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

1    from directly or indirectly asserting or charging infringement of the '974 Patent

2    against Preci-Dip and its representatives, agents, distributors, customers, and

3    contractors, present and prospective;

4          e.    Declaring that Tri-Star's actions complained of above constitute

5    Federal Unfair Competition in violation of 15 U.S.C. § 1125(a), and enjoining Tri-

6    Star from continuing such acts;

7          f.    Declaring that Tri-Star's actions complained of above constitute

8    a violation of the California Unfair Competition Act, Cal. Bus. & Prof. Code §

9    17200 et seq., and enjoining Tri-Star from continuing such acts;

10         g.    Declaring that Tri-Star's actions complained of above constitute

11   a violation of California common law unfair competition and enjoining Tri-Star

12   from continuing such acts;

13         h.    Declaring this an exceptional case under 35 U.S.C. § 285 and/or

14   15 U.S.C. § 1117, and rendering an award to Preci-Dip of its damages, as trebled,

15   reasonable attorneys' fees, expenses and costs in this action; and

16         i.    Granting Preci-Dip damages and such other and future relief as

17   this Court deems just and proper.

18

19   Dated: March 14, 2011

20                          SHEPPARD MULLIN RICHTER & HAMPTON LLP

21                          By: *Darren Franklin*

22                          DARREN M. FRANKLIN
                            Attorneys for Defendant and Counter-Claimant
23                          PRECI-DIP SA

24

25

26

27

28

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

-18-

W02-WEST:1DAF1\403360371.1

DEFENDANT PRECI-DIP SA'S AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendant and Counter-Claimant Preci-Dip SA hereby demands trial by jury of all issues triable as a matter of right to a jury.


Dated: March 14, 2011

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _Darren Franklin_

DARREN M. FRANKLIN

Attorneys for Defendant and Counter-Claimant
PRECI-DIP SA

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

W02-WEST:1DAF1\403360371.1

DEFENDANT PRECI-DIP SA'S AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

# EXHIBIT A

(12) **United States Patent**
Lehmann

(10) Patent No.: **US 6,264,508 B1**
(45) Date of Patent: **Jul. 24, 2001**

(54) **FEMALE TYPE CONTACT PIECE ENABLING ELECTRICAL CONTACT WITH A MALE ELEMENT**

(75) Inventor: **Pierre Lehmann**, Courcelon (CH)

(73) Assignee: **Preci-Dip Durtal SA**, Delemont (CH)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/499,638**

(22) Filed: **Feb. 8, 2000**

(30) **Foreign Application Priority Data**

Nov. 30, 1999 (EP) ................................. 99811102

(51) Int. Cl.[7] ................................. H01R 13/187
(52) U.S. Cl. ................................. 439/843
(58) Field of Search .................... 439/843, 844, 439/851, 852, 853, 854

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,689,337 | 9/1954 | Burtt et al. . | |
| 3,564,487 | 2/1971 | Upstone et al. . | |
| 4,461,530 | * 7/1984 | Brush, Sr. et al. | 439/843 |
| 4,685,761 | * 8/1987 | Locati | 439/843 |
| 5,322,459 | * 6/1994 | Spinato | 439/843 |
| 5,419,723 | 5/1995 | Villiers et al. . | |
| 5,516,310 | 5/1996 | Sawada . | |
| 5,897,404 | * 4/1999 | Goodman et al. | 439/843 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 0 090 549 A2 | 10/1983 | (EP) . |
| 2 775 389 | 8/1999 | (FR) . |

* cited by examiner

*Primary Examiner*—Tulsidas Patel
*Assistant Examiner*—Brian S. Webb
(74) *Attorney, Agent, or Firm*—Oliff & Berridge, PLC

(57) **ABSTRACT**

The contact piece (1) comprises a portion of female type able to accommodate a corresponding portion of male type. This female type portion includes a contact clip (4) provided with elastic fingers (42) oriented towards the opening of a lodging (10) destined to accommodate said male type portion. The piece is completed with a bushing (5) encircling the clip and provided with a front side (50) comprising a passage opening (51) serving as gauge, accepting or refusing the passage of a male portion according to its diameter. In this manner, the elastic fingers (42) always operate in an elastic mode and never suffer a permanent deformation. Such a disposition has many other advantages.

**20 Claims, 2 Drawing Sheets**



EXHIBIT A



Fig. 1B (Related Art)

Fig. 1C (Related Art)

Fig. 1A (Related Art)

Fig. 2 (Related Art)

EXHIBIT A



Fig. 3B

Fig. 3A

EXHIBIT A

US 6,264,508 B1

1

## FEMALE TYPE CONTACT PIECE ENABLING ELECTRICAL CONTACT WITH A MALE ELEMENT

The content of Application No 99811102.5, filed Nov. 30, 1999 in Europe, is hereby incorporated by reference.

### BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention concerns a contact piece of the female type usable in a connector, for example a connector answering the MIL norm or any other specification, or for any other application, such as for example in an integrated circuit base, or destined to be placed on a printed circuit board. The invention concerns more particularly the portion of this contact piece destined to accommodate the corresponding element of the male type.

2. Description of the Related Art

Several specifications or norms, notably the MIL norms and in particular the MIL-C 39029 norm, define a certain number of characteristics which this portion of the contact piece must comply with, for example contact resistance, engagement and separation force of the male contact piece, depth of engagement of the male piece before contact is established etc. According to these norms, these various parameters are to be measured both when the pieces are new as well as after multiple uses, and this under very diverse environmental, temperature, humidity and other conditions.

In order to attempt to comply with these requirements, manufacturers have proposed various constructions of this portion of the contact piece.

Several known embodiments of such portions of contact pieces will be described further below, in connection with FIGS. 1A and 1B as well as FIG. 2 ; these embodiments encounter notably the following disadvantages according to the constructions described : need to work the entire contact piece in a costly metallic alloy since it must have excellent electrical conduction properties as well as excellent mechanical properties, notably spring power, need to heat treat at least several portions of the piece in order to give it the necessary mechanical characteristics, need to cover the whole piece, or an important portion thereof, with costly plating, of gold or silver, in order to give it the necessary electrical characteristics, difficulty to comply with certain norm requirements, notably MIL norms, lack of any possibility of interchanging the different elements of the contact piece, etc.

### SUMMARY OF THE INVENTION

An object of the present invention is thus to propose a contact piece comprising notably a female portion destined to accommodate a corresponding male portion, of improved construction relatively to the known contact pieces, so as to avoid the aforementioned inconveniences of these contact pieces.

To achieve this object, a contact piece is proposed as described in the independent claim, particular embodiments or variants being described in the dependent claims. The last claims indicate more precisely some possible uses of such a contact piece.

### BRIEF DESCRIPTION OF THE DRAWINGS

The invention will be described in detail below, this description, which further includes certain advantages of the invention, making reference to the attached drawing comprising the figures, in which:

2

FIGS. 1A, 1B and 1C represent a portion of a contact piece according to a prior art construction, seen in partial longitudinal section, in elevational projection and in cross section, respectively,

FIG. 2 represents a portion of a contact piece according to another prior art construction, seen in partial longitudinal section, and

FIGS. 3A and 3B represent a portion of a contact piece according to a preferred embodiment of the invention, seen in partial longitudinal section and in elevational projection, respectively.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

In the following description as well as in all the figures, only the female type portion of the contact piece 1, destined to accommodate a corresponding male type element, will be mentioned or represented. This male element is constituted of a pin, its mating end being hemispherical or shaped like a truncated cone, and having a determined diameter. This male element can be the male portion of a corresponding contact piece or else a pin of an integrated circuit or even a connecting part of an electronic component etc. The other portion of the contact piece 1, not described or represented here, can be of any known type for this kind of contact piece and can comprise for example a portion in which a wire can be crimped, screwed or soldered, or a fastening portion on a connector or printed circuit board or a second female type portion to constitute a transition contact piece, etc.

According to the simplest embodiment known, the portion of the contact piece which is of interest here is constituted of an axial bore of one of the contact piece's extremities, followed by the making of radial slits on a portion of the length of the tubular portion realized by the bore, so as to form elastic tongues or fingers. These fingers are then pressed together so as to form an elastic clamp. This construction has many inconveniences, namely a risk of permanent deformation of one or many of the fingers in the case of the askew engagement of a male element or the engagement of a male element of too big a diameter. Furthermore, although the contact piece is constituted of only one piece, it is costly as the necessary material must have the electrical and mechanical properties required for its functioning.

A first advantages modification made to the above contact piece includes in covering the portion in question with a bushing, as seen in FIGS. 1A, 1B and 1C. One can see in these figures the contact piece 1, constituted essentially of a metallic pin of which one end, visible in the figure, is destined to accommodate a male element, not visible in the figures. The other end of the contact piece, not visible in the figures, is worked in a conventional manner to fulfil any known function of such a contact piece. It can be seen that the portion of the contact piece 1 which is of interest here has been bored axially, so as to build a lodging 10 in which the male element will come to be lodged. Slits 11, three in the embodiment represented here, have been shaped in order to separate three fingers 12. The free extremities 120 of these three fingers 12 are then pressed together, by permanent deformation, so as to close slightly the clamp formed by the three fingers, as can be seen in the figures. As described so far, this construction represents the first embodiment described previously. In order to prevent too strong an opening movement of the fingers 12, this portion of the contact piece is provided with a tube-shaped bushing 2, affixed by crimping or any other means onto the portion of

EXHIBIT A

US 6,264,508 B1

3

the contact piece 1 behind the fingers 12. This bushing 2 abuts against the external surfaces of the fingers 12, preventing these from being moved apart too much.

The extremity of bushing 2 facing the opening of lodging 10 comprises an end side 20 provided with a traversing opening 21 coaxial to the longitudinal axis of contact piece 1, respectively of this opening. The diameter of this opening 21 is determined so as to let pass only a male element of a diameter inferior to that of a male element which would flatten the fingers 12 against the bushing 2.

The opening 21, coaxial to the longitudinal axis of the lodging 10 further serves as guiding means of the male element when mating.

Although this latter construction limits the risk of deformation of the fingers 12 when a male element having too wide a diameter or being not aligned is engaged, the pressure applied by the bushing 2 on the fingers 12 when these are apart, notably on the rear portion of these fingers, means that the latter no longer work fully elastically, which in particular decreases the electric conducting qualities of the contact, notably in case of vibrations.

The inconvenience of machining the fingers 12 and the rest of the contact piece 1 from a single rough piece, i.e. of the same material, remains and results in a costly contact piece. For the same reasons, it is difficult and/or expensive to shape the extremities 120 of the fingers so that they become rounded for an easier mating of the male element; a slightly askew engagement of the male element relative to the longitudinal axis of the lodging 10 can result in the male element being brought to bear against the extremity 120 of a finger, leading this finger to be bent towards the inside of lodging 10, i.e. to the contact piece being destroyed.

FIG. 2 shows a construction proposed to remedy these last flaws.

As previously, one has a contact piece 1 whose extremity that is of interest here is provided with an axial bore forming a lodging 10 for the male element to be accommodated. A contact clip 3 is inserted inside lodging 10. The contact clip 3 is formed from a metallic band, of a width corresponding to the length of the clip, which is embossed so as to form a lateral strip fitted with several fingers of an essentially trapezoidal shape, projecting on one of the sides of the lateral strip, the larger bases of each finger being adjacent to the lateral strip whereas the small bases are free. The strip is divided in portions, each comprising several trapezoidal fingers of the length of the portion corresponding to the interior perimeter of the lodging 10. The portion of strip is then coiled, the fingers being then pressed together by their extremities so as to deform them and decrease the inscribed diameter between the free extremities of the fingers. The clip 3 thus formed is inserted in the lodging 10, the free extremities of the fingers 30 being directed towards the bottom of lodging 10; the portion 31 of clip 3, formed by the aforementioned lateral strip, is maintained towards the open extremity of lodging 10 by any known means, insertion, crimping or other.

According to this construction, only clip 3 must be made of an alloy having excellent conductive qualities as well as excellent mechanical qualities of spring power. Therefore, the rest of contact piece 1 can be worked in a cheaper metal or alloy, for example brass. The clip 3 will be constituted preferably of a bronze/beryllium alloy or other.

During the mating of a male element, the fingers 30 move apart in order to clamp said male element. The moving apart of the fingers 30 is also restricted here by the inner surface of the lodging 10, with the same inconveniences as mentioned above.

4

Another inconvenience of this construction is that, in view of the low value of the angle α relative to the longitudinal axis formed by the fingers 30 pressed together, relative to the longitudinal axis of the lodging 10, the length at which it is necessary to engage the male element into the lodging 10 before its extremity comes into contact with the fingers 30 is important. Increasing this angle in order to diminish this distance could lead to the fingers 30 buttressing against the male element when the latter is withdrawn, thus causing it to be spoiled.

All the inconveniences mentioned previously in relation to the known constructions of the prior art are remedied by the construction according to the invention, of which a preferred embodiment is represented in FIGS. 3A and 3B. FIG. 3A shows a male element 6 for connection to the contact piece and a connector, component or printed circuit board 60 fitted to the contact piece.

As previously discussed, one has a contact piece 1 whose extremity destined to accommodate the male element 6 is bored longitudinally so as to form a lodging 10 for accommodating the male element. The open extremity of lodging 10 comprises a first inner cylindrical neck 100, whose interior diameter is superior to that of lodging 10, followed by a second inner cylindrical neck 101 whose inner diameter is comprised between that of neck 100 and that of the bottom of lodging 10.

A contact clip 4 is inserted by the open extremity of lodging 10, so that its cylindrical portion 40 comes to be positioned on the inner cylindrical neck 101.

The clip 4 is obtained preferably in a manner rather similar to that which has been described previously for clip 3. A complementary arching operation towards the outside of the fingers' extremities is conducted when the clips are always assembled in a continuous strip. As an alternative to the trapezoidally shaped lamellae described, one can also have lamellae of a rectangular shape and separation slits of a trapezoidal shape.

The clip 4 is fastened, by pressing in, crimping or any other known means on this inner neck 101. Unlike what has been described above in connection with clip 3, the contact fingers 41 of clip 4 have their free extremities 410 facing the opening of lodging 10. These free extremities 410, for each of the fingers 41, are formed so as to present an arched end portion 411, the free extremity directed towards the exterior being moved away from the longitudinal axis of lodging 10. This device is completed by an external bushing 5 pressed on and fastened on an outer cylindrical neck 102 of the contact piece 1. The extremity of bushing 5 facing the opening of lodging 10 comprises an end side 50 provided with a traversing opening 51 coaxial with the longitudinal axis of the contact piece 1, respectively of lodging 10. The diameter of this opening 51 is determined so as to let pass only a male element 6 of a diameter acceptable by the contact clip 4. It can further be seen in the figure that if a male element 6 has been engaged into clip 4, its diameter being lower than the diameter of opening 51, the moving apart of the fingers 41 of clip 4 is never restricted by the inner diameter of neck 100, since it is superior to that of neck 101, nor by the inner diameter of bushing 5, since it is greater than that of neck 101, nor by the inner diameter of bushing 5, since the latter is dimensioned so as to allow the fingers 41 to move away to a maximum. Thus, for a determined diameter, respectively gauge, of a male element 6 , the corresponding female contact piece comprises a contact clip 4 whose fingers 41 are subjected to an exclusively elastic deformation, on their whole length and on their

EXHIBIT A